" MILDRED McCARTHY ", Petitioner, *v.* " WALTER S. McCARTHY ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, February 28, 1950.

*John P. McGrath, Corporation Counsel* (*Mathilda Miller* of counsel), for petitioner.

*Leonard Ruisi* and *Nicholas Maltese* for respondent.

PANKEN, J. I wrote a memorandum in this case. In the course of that memorandum, I, among other things, said, " The Domestic Relations Court of the City of New York is an instrumentality which is based and lodged on a social foundation ". That I reiterate. In the same opinion I had occasion to say, " In this case, it appears from the statements made both by counsel for the respondent and counsel for the City, that this man has left his wife for some one else, and that some one else has brought into the world a child by the respondent ". What I then said is now confirmed by evidence, by testimony given under oath.

The wife and three children of this man are partially supported, and have been so supported, by the department of welfare of the city of New York. The wife and the children are a charge on the public. It is unfortunate that this lady, and she appears to me as such, is a charge on the public, a recipient of relief. That in itself must be galling to her, unless I am mistaken. It certainly

---

* Names used herein are fictitious for the purposes of publication.

is harmful, if not destructive to the proper growth and the development of the three children who have been brought into the world by this woman in her association with her husband. It is repellent to me, from an ethical standpoint as well as a juridical angle, to require this woman to be the recipient of relief and to expose the children born to her to ministrations of social investigators and social workers and pryers into the lives of these children. Sometimes judges are confronted with situations which are abhorrent, repellent and repugnant; yet, they have to make determinations and decisions no matter how abhorrent a determination or decision may appear to the court.

Under our system of jurisprudence a man is entitled to a hearing. The lowliest of the low are entitled to justice, a full measure of justice at the hands of our courts, and it is not a privilege to receive justice; it is a right. The Justices of the courts must protect the rights of the individual. If that were not done, I fear not only a breakdown of the judicial system, but a breakdown of the democratic way of life.

Repeating what I have said on another occasion, and possibly in the memorandum which I have already adverted to, decency and simple justice based in ethics and on moral considerations, requires that as between the inamorata, where the consequence of a meretricious relationship has given birth to a child, and the wife and her three children are herein concerned, the wife should be saved, not hurt in consequence of having to become a supplicant for aid, no matter where that aid is solicited. Aid is aid, whether it comes from the community or it comes from a private individual. Of course, it is more in consonance with advanced thought and social responsibility that the community be asked for aid rather than to make supplication to some private individual who might, out of the goodness of his heart, render relief by way of aid. To think otherwise than I have here indicated would amount to a condonation of the conduct of this man and his inamorata by the community, by the courts, who are representative of a community.

I have no jurisdiction insofar as the conduct of the welfare department is concerned. It is responsible to the city administration, but I have jurisdiction over my own conscience and jurisdiction in the interpretation of the law in the light of morals and ethics, and so, in response to ethical and moral considerations, I find that before this man is to provide for the support of his inamorata and her child, his liability for the support of his wife and children is superior.

In the case of *Domb* v. *Domb* (176 Misc. 409) I have had occasion to lay down a rule of law which I think has been universally and uniformly followed; that the need of a person for whom another is chargeable is not the only fact and factor to determine what the person chargeable is to be required to contribute; it is his ability to contribute that is also a fact and factor necessary to determine how much he is to contribute.

Presently the respondent is receiving unemployment insurance benefits. His unemployment insurance benefit is limited by law to $26 weekly. He cannot, under the circumstances, contribute $28 weekly as the order requires him to. In my own mind I am debating with myself as to whether or not I should not require him to contribute $20 weekly out of the $26 towards the support of his wife and children, and let him make application to the home relief bureau, to the welfare department for relief, in consequence of his lack of funds to maintain himself.

The evidence in this case is not sufficient for me to do exactly that, though my inclination is to do it. However, the order will be modified to one half of what he receives by way of unemployment insurance benefits, and that modification is to continue only until the first Tuesday in April of 1950, when under the evidence in the case, it appears the respondent will be in a position — will find remunerative work — enabling him to pay not only $28, but a sum, in my judgment, sufficient to maintain his wife and children without recourse to the welfare department for relief.

So ordered.